**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APR 28 2008
CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

MICHAEL HALL,

 Petitioner,

v.

L.C. EICHENLAUB,

 Respondent,
_____/

Case No. 07-14665
HONORABLE VICTORIA A. ROBERTS
UNITED STATES DISTRICT COURT JUDGE

## OPINION AND ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS, ORDERING PETITIONER'S IMMEDIATE RELEASE, AND CANCELLING THE HEARING ON PETITIONER'S MOTION FOR BOND

Michael Hall, ("Petitioner"), who is currently incarcerated at the Federal Correctional Institution (FCI) in Milan, Michigan, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. In his application, filed both *pro se* and through counsel, James R. Gerometta of the Federal Defender Office, Petitioner challenges the United States Parole Commission's decision to impose successive terms of special parole after Petitioner's original term of special parole was revoked in 1995, when he was imprisoned for violating the initial term of special parole.

Petitioner also filed a motion for release on bond. The Government filed an answer to the petition for writ of habeas corpus and a response to the bond motion.

For the reasons stated below, the Petition for Writ of Habeas Corpus is GRANTED. The Court further orders that Petitioner be released immediately from the custody of the Bureau of Prisons (BOP). Finally, the hearing set for May 13, 2008 at

1

10:30 a.m. on Petitioner's Bond motion is cancelled in light of this decision.

## I. Background

Petitioner was sentenced in 1985 to a ten-year prison term and a ten-year special parole term for importing cocaine. He was paroled on October 25, 1990, and was to remain under regular parole supervision until October 26, 1995, when his special parole term would begin.

Petitioner's parole was revoked on September 29, 1993, for using drugs and for violating the special drug aftercare condition. He was released from custody on April 28, 1995, and was to remain on regular parole until April 29, 1995. Then, his ten-year special parole term was to begin on April 30, 1995, and end on April 29, 2005.

On October 4, 1995, Petitioner's special parole was revoked. None of the time Petitioner spent on special parole was credited toward his term. Based upon the Commission's revocation order, the BOP recalculated the expiration of Petitioner's ten-year special parole term to be August 3, 2005. He was reparoled on June 3, 1996 and was to remain under the jurisdiction of the Parole Commission until the recalculated expiration of his term.

As Respondent outlines in great detail in its response to the petition for writ of habeas corpus, Petitioner's parole has been revoked several times since June of 1996. Each time that Petitioner's special parole term has been revoked, he forfeited credit for the time spent on parole. Additionally, each time Petitioner was reparoled, he was placed

2

on special parole. Because of these continued revocations, Petitioner forfeited six years in time spent on parole.

Petitioner's special parole was last revoked on June 5, 2007. At the revocation hearing, his attorney raised an objection to the Commission's previous decisions to impose a successive special parole after Petitioner' prior special parole term had been revoked. Following this hearing, the Commission revoked Petitioner's special parole, forfeited all of the time spent on special parole, and granted reparole effective June 24, 2008. The National Appeals Board affirmed the decision on October 10, 2007. Based upon the Commission's decision, the BOP recalculated the expiration of Petitioner's sentence as April 17, 2011.

Petitioner seeks habeas relief on the following ground:

I. Whether the United States Parole Commission has authority under 21 U.S.C. § 841(c) to reimpose a term of special parole following a revocation of a special parole term, and after it has imposed a term of regular parole?[1]

## II. Discussion

Petitioner contends that the Parole Commission lacked the authority to impose a new term of special parole after Petitioner's initial term of special parole was revoked in 1995.

Each time Petitioner violated each new term of special parole, he forfeited "street

---

[1] Petitioner also raised a second question of whether this Court could grant him habeas relief without first ordering respondent to file a response, if the Court found that the National Appeals Board's decision was not in accordance with Sixth Circuit law. This issue has been mooted by the fact that Respondent has filed an answer to the petition for writ of habeas corpus.

3

time," the time between the date when he was re-released from prison on regular parole and the date when he was arrested for violating parole. As a result, the Parole Commission believes it has jurisdiction over Petitioner's case until April 17, 2011. On the other hand, Petitioner contends that if the street time lost when special parole was erroneously reimposed is credited, the Commission's jurisdiction over Petitioner expired on August 3, 2005 and he should be immediately released.

A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which his or her sentence is executed. *Capaldi v. Pontesso*, 135 F. 3d 1122, 1123 (6th Cir. 1998). Petitioner's challenge to the Parole Commission's decision to reimpose a special parole term is properly brought under § 2241, because it involves a challenge to the execution of his sentence. *See Wright v. U.S. Bd. of Parole*, 557 F. 2d 74, 77 (6th Cir. 1977).

At the time of Petitioner's sentence, 21 U.S.C. § 841(c) required the court to sentence him to a mandatory period of special parole because he was convicted of a drug crime.[2] Special parole is different, however, from regular parole in three aspects:

1. it follows the term of imprisonment, while regular parole entails release before the end of the prison term;

2. It is imposed, and its length is selected by the sentencing judge, rather than the Parole Commission; and,

---

[2] This statutory provision was repealed by the Anti-Drug Abuse Act, Pub.L. No. 98-473, Title II, § 224(a)(2), 98 Stat. 2030 (1984). Special parole has been replaced in all sentencing provisions with "supervised release."

4

3. If the conditions of special parole are violated, the parolee is returned to prison to serve the entire parole term; he does not receive credit for the time spent in non-custodial supervision.

*Urbina v. Thoms,* 270 F. 3d 292, 295 (6th Cir. 2001).

In *Dolfi v. Pontesso,* 156 F. 3d 696, 698-99 (6th Cir. 1998), the Sixth Circuit held that when the Parole Commission chooses to reparole a federal prisoner after revoking his original special parole term, it may not reimpose a successive term of special parole and thereby prevent the parolee from receiving credit for street time he subsequently served on reparole. The Sixth Circuit noted that the majority of the circuits had concluded that the Parole Commission does not have authority under § 841(c) to impose a new term of special parole after revoking the original term. *Id.* at p. 698. (collecting cases). The Sixth Circuit further noted that: "[T]he statute's use of the word revoke is the linchpin of these decisions." *Id.* The Sixth Circuit noted that the Second, Third, Fourth, Fifth, Seventh, Ninth, and Tenth Circuits all held that once a federal offender's original term of special parole is "revoked," "the special parole term disappears and is replaced by a term of imprisonment that can only be cut short under traditional parole, i.e., a term that upon reparole gives the offender credit for the street time he subsequently serves on parole." *Dolfi,* 156 F. 3d at 698-99.

In reaching its decision, the Sixth Circuit noted that § 841(c), as well as several Parole Commission regulations that deal with special parole, namely, 28 C.F.R. §§ 2.52(b) & 2.57(c), allow an offender to be reparoled after he is imprisoned for violating

5

his special parole, but fail to specify whether regular or special parole should be used. *Id.* at 699. The Sixth Circuit further concluded:

> "But unlike the Parole Commission, we believe the more reasonable interpretation of the statute's (and the regulations') silence is to assume that traditional parole should govern the release of those who do not spend their entire special parole term in jail."
> *Id.* at 700.

The Sixth Circuit also relied by analogy on its prior decision in *United States v. Truss,* 4 F.3d 437, 441 (6th Cir. 1993), in which it followed the majority of the circuits and held the express language of 18 U.S.C. § 3583(e)(3) "contemplates only a complete revocation of an offender's supervised release term," preventing a court from imposing successive new terms of supervised release." However, although the Sixth Circuit acknowledged that Congress had since added 18 U.S.C. § 3583(h) to allow a sentencing court to reimpose supervised release after revocation, they concluded that this would not affect the Sixth Circuit's interpretation of § 841(c), because it had "not been similarly amended." *Id.* at 699, n. 1.

In 2000, the United States Supreme Court decided *Johnson v. United States,* 529 U.S. 694 (2000), in which the Supreme Court held that 18 U.S.C. § 3583(e)(3), the supervised release statute, authorizes district courts to impose a second term of supervised release following a recommitment from a prior term of supervised release. In so ruling, the Supreme Court held that Congress used the term "revoke" in § 3583(e)(3) in an "unconventional" sense to mean to "recall," rather than to "annul." *Id.* at 707.

Based on the decision in *Johnson,* the Parole Commission and the BOP several times reimposed successive terms of special parole upon Petitioner after earlier terms of special parole were revoked. The U.S. Attorney, in his answer, contends that the holding in *Johnson* invalidated the Sixth Circuit's decision in *Dolfi,* because of the similarity between special parole and supervised release statutes.

However, in *Gillmore v. U.S. Parole Com'n,* 124 Fed.Appx. 941, 942 (6th Cir. 2005), the Sixth Circuit concluded that the Supreme Court's subsequent decision in *Johnson* did not disturb the ruling in *Dolfi,* "because [*Johnson*] concerned a court's authority to reimpose supervised release following re-incarceration, not the conversion of regular parole to special parole." However, because the petitioner's parole in *Gillmore* had already ended, the question of whether the Parole Commission erred in converting his regular parole to special parole was moot. *Id.*

In opposition to the motion for bond, Respondent argues that this Court should not be bound by the ruling in *Gillmore,* because the Sixth Circuit's finding that *Dolfi* had not been overrruled by *Johnson* was dicta and thus, not binding precedent.[3] Instead, Respondent urges this Court to follow the Second Circuit's ruling in *Rich v. Maranville,* 369 F.3d 83 (2nd Cir. 2004), in which that court held that the reimposition of a successive

---

[3] Although not urging the Court to reject *Gillmore* on this basis, Respondent alludes to the fact that this was an "unpublished decision." While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber,* 208 F. 3d 545, 551, n. 3 (6th Cir. 2000). Moreover, "[T]he fact that West Group is now digesting and publishing, in its 'Federal Appendix' series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an 'unpublished' opinion." *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 747, n. 1(E.D. Mich. 2005).

7

term of special parole after a special parole revocation is permitted based on the Supreme Court's decision in *Johnson*.

The problem with Respondent's argument is that there has been no clear directive, either by the Supreme Court or the Sixth Circuit, that *Johnson* invalidated the Sixth Circuit's decision in *Dolfi*. *Johnson* dealt with whether a new term of supervised release could be imposed by a district court following a revocation of a term of supervised release, but it did not address the issue raised by Petitioner: whether a successive term of special parole can be imposed following revocation of an initial term of special parole.

Absent a clear directive from the Supreme Court or a decision of the Court of Appeals sitting *en banc*, a panel of the Court of Appeals, or for that matter, a district court, is not at liberty to reverse the circuit's precedent. *See Brown v. Cassens Transport Co.*, 492 F. 3d 640, 646 (6th Cir. 2007). In the absence of Supreme Court precedent directly on point, a district court should decline to "underrule" established circuit court precedent. *See Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 771, n. 8 (E.D. Mich. 2004). Moreover, a district court is bound by the decisions of the Circuit Court of Appeals in which it sits. *Cochran v. Trans-General Life Ins. Co.*, 60 F. Supp. 2d 693, 698 (E.D. Mich. 1999).

By contrast, a district court is not bound by decisions of Courts of Appeals for other circuits. *See Ghandi v. Police Dept. of City of Detroit*, 74 F.R.D. 115, 122 (E.D. Mich. 1977). Unless an *en banc* panel of the Sixth Circuit expressly overruled *Dolfi* or an

8

intervening Supreme Court undermined the decision in *Dolfi*, this Court is bound to follow the Sixth Circuit's holding in that case.

This Court that the Supreme Court's decision in *Johnson* did not overrule the Sixth Circuit's holding in *Dolfi*. Under *Dolfi*, the Parole Commission cannot impose a successive special parole term after a prior special parole term has been revoked.

In *Doyle v. Warden*, 447 F. Supp. 2d 1123 (C.D. Cal. 2006), a district judge rejected a similar argument that *Robles v. United States*, 146 F.3d 1098, 1100 (9th Cir.1998), a Ninth Circuit case cited with approval in *Dolfi*, was irreconcilable with *Johnson* because *Robles* purportedly was based on an interpretation of 18 U.S.C. § 3583 that the Supreme Court overruled in *Johnson*.

That district judge noted that the Ninth Circuit in *Robles* did not base its decision that a new special parole term could not be imposed following the revocation of the first term exclusively, or even principally, on an interpretation of section 3583. Rather, the Ninth Circuit based its decision "principally on the assertedly 'clear and unambiguous' language of section 841(c), language nowhere appearing in section 3583." *Doyle*, 447 F. Supp. 2d at 1128. The judge in *Doyle* further noted that the Supreme Court in *Johnson* "did not purport to interpret section 841(c)." *Id.* at 1129 (*citing Johnson*, 529 U.S. at 711, n. 11). Finally, the district court judge noted that in reaching its decision, the Supreme Court in *Johnson* relied on language in section 3583 nowhere contained in section 841(c):

> To discern implicit authority in section 3583 to impose supervised release following revocation, the *Johnson* Court departed from the "conventional" meaning of the term "revoke." The *Johnson* Court read this term to mean "to recall" or "to summon back," rather than "to terminate." The *Johnson* Court based this departure on, *inter alia*, the text of section 3583. In particular, the *Johnson* Court emphasized that when Congress intended the meaning "terminate" elsewhere within section 3583(e), Congress employed the word "terminate," rather than the word "revoke." *Id.* at 707, n. 9, 707-10, 120 S.Ct. 1795. Section 841(c) is not subject to any comparable textual analysis, for the word "terminate" does not appear in section 841(c).

*Doyle,* 447 F. Supp. 2d at 1129.

For similar reasons, this Court finds that *Johnson* did not undermine or overrule the Sixth Circuit's decision in *Dolfi*. Although the Sixth Circuit in *Dolfi* did base its decision, in part, upon a prior interpretation of section 3583 which was overruled by *Johnson,* the Sixth Circuit also based its decision on the clear language of § 841(c). In particular, the Sixth Circuit noted that although § 841(c) and 28 C.F.R. §§ 2.52(b) & 2.57(c) allowed an offender to be reparoled after he was imprisoned for violating his special parole, the statute and the regulations failed to specify whether regular or special parole should be used. *Dolfi,* 156 F. 3d at 699. Moreover, although the Sixth Circuit acknowledged that Congress had added 18 U.S.C. § 3583(h) to allow a sentencing court to reimpose supervised release after revocation, that change would not affect the Sixth Circuit's interpretation of § 841(c), because it had "not been similarly amended." *Id.* at 699, n. 1.

Indeed, the language of 18 U.S.C. § 3553(e)(3), which authorized the revocation of supervised release, and 21 U.S.C. § 841(c), although similar, are not identical. The

10

supervised release statute allowed the district court to order the defendant to serve "all or part of the term of supervised release" in prison upon revocation. 18 U.S.C. 3553(e)(3) (1986 ed.). This language led the Supreme Court to hold that, in terms of supervised release, revoke did not mean the complete termination of the supervised release. *Johnson*, 529 U.S. at 705-06. Unlike the supervised release statute, which allowed the district court to require the defendant to serve "all or part of the term of supervised release" in prison, the special parole statute required that upon revocation the special parole term must be converted to a term of imprisonment and added to the parolee's original sentence. Under the special parole statute, unlike under supervised release, the entire term of supervision is converted to a term of imprisonment. Following the conversion of the special parole term to a term of imprisonment, there remains nothing of the special parole term to be reimposed. Thus, the differences in the language of the statutes suggest that the holding in *Johnson* has no applicability to the special parole statute.

Finally, as the judge in *Doyle* indicated, the Supreme Court in *Johnson* did not specifically address the issue of special parole. In fact, there is some suggestion in that opinion that the Supreme Court might treat the issue of special parole differently than supervised release. *See Johnson*, 529 U.S. at 711, n. 11 ("Though the special parole statute did not explicitly authorize reimposition of special parole after revocation of the initial term and reimprisonment, the Parole Commission required it. See 28 CFR § 2.57(c) (1999). Some courts have recently decided that this regulation is inconsistent with 21

11

U.S.C. § 841(c)(1982 ed.), but this does not affect the backdrop against which Congress legislated in 1984")(internal citation omitted); *See also Johnson,* 529 U.S. at 724-25 (Scalia, J., dissenting)(Because the Sentencing Reform Act's "adoption of supervised release was meant to make a *significant break with prior practice* ....The Court's effort to equate parole and supervised release is unpersuasive.")(internal citations omitted)(emphasis added).

When this Court considers the differences in the language of § 841(c) and § 3583, coupled with the fact that the Sixth Circuit did not base its decision in *Dolfi* solely upon its prior interpretion of 3583, but also upon the clear language of § 841(c), this Court concludes that *Dolfi* remains good law and must be followed. Stated differently, neither this Court nor the Parole Commission may lawfully change the Sixth Circuit's decision in *Dolfi. Doyle,* 447 F. Supp. 2d at 1130.

This Court's determination that *Dolfi* remains good law is only strengthened by the fact that the Sixth Circuit in *Gillmore* concluded that its decision in *Dolfi* had not been overturned by the Supreme Court's subsequent decision in *Johnson.* While it is true that dicta is not binding precedent, *See United States v. Burroughs,* 5 F. 3d 192, 194 (6th Cir. 1993), it may nevertheless be followed if "sufficiently persuasive." *PDV Midwest Refining, L.L.C. v. Armada Oil and Gas Co.,* 305 F. 3d 498, 510 (6th Cir. 2002)(*citing Central Green Co. v. United States,* 531 U.S. 425, 431 (2001)(*quoting Humphrey's Ex'r v. United States,* 295 U.S. 602, 627 (1935)). The Sixth Circuit's conclusion in *Gillmore*

that its previous holding in *Dolfi* has not been disturbed or overturned by *Johnson* is further evidence that *Dolfi* remains good law and prohibits the Parole Commission from imposing new terms of special parole following the revocation of Petitioner's original special parole term in 1995.

Once Petitioner's special parole was revoked on October 10, 1995, it was entirely converted to a term of prison. Any subsequent parole of Petitioner was regular parole. Under regular parole, Petitioner should not have forfeited street time on any subsequent parole revocations for non-criminal violations. The Parole Commission's jurisdiction over Petitioner expired on August 3, 2005.

An absolute or unconditional writ issues where the nature of the error is incurable. *See Gentry v. Deuth*, 456 F. 3d 687, 692 (6th Cir. 2006). Since Petitioner's sentence expired on August 3, 2005, this Court orders that the BOP release Petitioner immediately from custody. *Dolfi*, 156 F. 3d at 701.

Since this Courts grants an unconditional writ of habeas corpus and orders Petitioner's immediate release, the motion for release on bond is moot and the evidentiary hearing scheduled for May 13, 2008 on that motion is cancelled.

### III. ORDER

PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS UNCONDITIONALLY GRANTED. RESPONDENT IS ORDERED TO RELEASE PETITIONER FROM CUSTODY IMMEDIATELY.

IT IS FURTHER ORDERED that the Court's Bond Motion Hearing of May 13, 2008 is cancelled.

**IT IS ORDERED.**

**Dated: 4/28/08**

/s/ Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
**UNITED STATES DISTRICT COURT**